FILED

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TENNESSEE
# AT KNOXVILLE

25 APR -3 PM 12: 31

US DISTRICT COURT
EASTERN DIST. TENN.

| | |
|---|---|
| Kelly Brooke Martin, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) Civil Action |
| | ) Case No. 3:24-cv-00075-KAC-JEM |
| University of Tennessee, | ) |
| | ) |
| Defendant. | ) |

## PLAINTIFF PROPOSED PRETRIAL ORDER

### 1. Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as the Plaintiff's claims arise under federal law, including the Age Discrimination in Employment Act 29 U.S.C. § 621 et seq., the Americans with Disabilities Act 42 U.S.C. § 12101 et seq., and the Genetic Information Nondiscrimination Act 42 U.S.C. § 2000ff et seq.. The Plaintiff asserts that the Defendant's repeated violations of these federal statutes establish clear grounds for this Court's jurisdiction.

### 2. Admissions and Stipulations

The following material facts are undisputed and shall be read to the jury as true:

1. The Plaintiff was hired by the University of Tennessee in the Spring of 2019 as an Assistant Professor of Practice for the BSSW online degree program at the College of Social Work.

2. The Plaintiff was asked whether she was willing to teach on campus and agreed, pending reasonable accommodation.

3. The Plaintiff requested an accessible parking space due to her documented mobility-related disability, but this request was denied.

1

4. The Plaintiff was subjected to a pattern of harassment, discrimination, and retaliation by colleagues and supervisors.

5. The Plaintiff was subjected to derogatory remarks regarding her body and was marginalized in professional settings.

6. The Plaintiff's performance was equal to or greater than her colleagues, but she was compensated at a lower rate.

7. The Plaintiff reported workplace harassment to the College of Social Work administration and Human Resources.

8. The Plaintiff was placed on paid administrative leave twice and terminated without cause.

9. The Plaintiff was denied promotion and paid opportunities while less qualified colleagues advanced.

10. The Plaintiff filed a formal discrimination complaint and an EEOC Charge of Discrimination, resulting in a Notice of Right to Sue.

## 3. General Nature of the Claims of the Parties

a. Plaintiff's Theory

The Plaintiff asserts that she was subjected to unlawful and egregious treatment in violation of multiple federal statutes, specifically, the ADEA, the ADA, and GINA.

(i) Termination of Employment

1. The Plaintiff was wrongfully terminated under pretextual reasons, despite a record of strong performance.

2. The Defendant's justification for termination is inconsistent with the evidence and indicative of discriminatory and retaliatory intent.

(ii) Failure to Promote

3. The Plaintiff was denied advancement opportunities that were granted to less experienced, less qualified faculty members.

2

4. The Defendant engaged in discriminatory promotion practices, depriving the Plaintiff of career advancement based on protected characteristics.

(iii) Failure to Accommodate

5. The Plaintiff has a documented mobility-related disability and requested accommodation, including an accessible parking space, class assignments closer in proximity, and online teaching options, which were ignored or denied.

6. The Plaintiff was required to teach in physically inaccessible locations without proper accommodation, violating the ADA.

(iv) Unequal Terms and Conditions of Employment and Disparate Treatment

7. The Plaintiff was paid less than similar or less qualified colleagues.

8. The Plaintiff was subjected to harassment, unwarranted reprimands, and retaliatory administrative leave and dismissal.

(v) Retaliation

9. The Plaintiff reported harassment and discrimination through her chain of command and Human Resources.

10. In response, the Defendant escalated adverse actions against the Plaintiff, culminating in her termination.

**Supporting Evidence**

The Plaintiff's claims are supported by a preponderance of documented evidence, including:

Records confirming accommodation requests

Email communications

Letter from the University's Human Resources Department (January 11, 2022), confirming receipt of Plaintiff's harassment and discrimination complaint

Plaintiff's administrative leave notices (March 14, 2022, and September 5, 2022), indicating retaliatory actions

Termination letter (September 26, 2022), demonstrating pretextual reasons for dismissal

EEOC Charge of Discrimination (May 17, 2023) and EEOC Notice of Right to Sue (November 29, 2023)

EEOC Charge Files

Plaintiff's responses to the Defendant's interrogatories, detailing the names of individuals aware of denied accommodation requests; specific acts of harassment, including derogatory comments and exclusionary behavior; retaliatory actions, including intimidation and workplace ostracization; failure to address the Plaintiff's complaints properly or engage in the interactive process

Dr. Camille Hall Deposition

Dr. Gary Naime Deposition

Dr. Kelly Martin Deposition

Social Security Administration Notice of Disability Decision – Fully Favorable

Medical Records confirming Plaintiff Diagnosis

Video Recordings

Text Messages

Committee for Equity and Inclusion Meeting Notes

Student Course Evaluations

University of Tennessee Faculty Handbook

OIR Investigation Report (January 11, 2024)

University of Tennessee EEOC Position Statement

University of Tennessee Harassment Policy

University of Tennessee Equal Opportunity Policy

4

"What's it like to be a Little Person?" Publicly Disseminated UTCSW Facebook Live Event about Plaintiff's Genetic Condition

UTCSW publicly disseminated advertisements for "What's it like to be a Little Person"

Plaintiff HR File

Plaintiff Annual Performance Reviews

Dr. Lori Messinger Meeting Notes for March 14, 2022 (created March 15, 2022)

OED Meeting Notes

University of Tennessee Bullying Policy

University of Tennessee Code of Conduct Policy

UTCSW Salary Data

**Plaintiff Witnesses**

The following list of Witnesses will be called upon to testify in this case:

Dr. Kelly Martin, Plaintiff

Dr. Gary Namie

Dr. Lori Messinger, UTCSW

Dr. Javonda Williams Moss, UTCSW

Dr. Camille Hall

Dr. Robert Mindrup, UTCSW

Ann Ryan, UTCSW

Tiffany Harmon, UTCSW

Ashley Hiatt, UTCSW

Tony Murchison, UTCSW

Gina Middleton, UTCSW

Julie Roe, University of Tennessee

Jon Chandler, University of Tennessee

Dr. Stan Bowie, UTCSW

Dr. Patricia Bamwine, UTCSW

Jill Malolepszy, University of Tennessee

Tina Smith, University of Tennessee

Dr. Katrice Morgan, University of Tennessee

Rachel Dey, University of Tennessee

Dr. Theresa Abrams, UTCSW

Kate Chaffin, UTCSW

Dr. Anne Conway, UTCSW

Kim Denton, UTCSW

Christy Hickman, UTCSW

Dr. Andrea Joseph McCatty, UTCSW

Dr. Robert Mindrup, UTCSW

Dr. William Nugent, UTCSW

Dr. David Patterson

Dr. Phyllis Thompson, UTCSW

Martina Ward, UTCSW

Natalie Crippen, UTCSW

Amanda Gandy, UTCSW

**b. Defendant's Theory**

To be completed by Defendant

6

## 4. Contested Issues of Law

Pursuant to the Scheduling Order and Federal Rules of Civil Procedure, the following legal issues remain contested and require resolution before or during trial:

## A. Americans with Disabilities Act Failure to Accommodate

Whether the Defendant violated the Americans with Disabilities Act (42 U.S.C. § 12101 et seq.) by failing to provide the Plaintiff with reasonable accommodation. The Plaintiff alleges that the Defendant violated the Americans with Disabilities Act by repeatedly failing to provide reasonable accommodations and then retaliating against her for requesting such accommodations. Specifically, the Plaintiff requested an accessible parking space due to her mobility-related disability and modifications to her teaching schedule to prevent physical hardship. The Defendant denied or ignored these requests, forcing the Plaintiff to arrive significantly earlier than other faculty members to secure parking and endure excessive physical strain navigating campus. Furthermore, the Plaintiff requested modifications to her Fall 2022 teaching schedule to move her courses online or consolidate them into accessible locations. The Defendant failed to respond, and when the Plaintiff adapted her schedule herself out of necessity, she was suddenly reprimanded and later terminated under pretextual justifications. The Defendant's actions constitute a violation of the ADA, as employers are legally required to engage in an interactive process to accommodate disabled employees rather than punish them for their requests. The Equal Employment Opportunity Commission (EEOC) has made it clear that an employer's failure to provide reasonable accommodation, or even to discuss possible accommodation with an employee who requests it, violates the ADA. Courts have consistently ruled that an employer's failure to engage in an interactive accommodation process is itself unlawful discrimination (Taylor v. Phoenixville Sch. Dist., 184 F.3d 296 (3d Cir. 1999). The Plaintiff was entitled to reasonable accommodation that would not impose an undue hardship on the University, yet the Defendant refused to engage in this process and instead used her attempts to self-accommodate as grounds for adverse employment action. The Plaintiff seeks a ruling on whether the Defendant's denial of an accessible parking space, refusal to approve course modifications, and retaliatory disciplinary actions constitute a clear violation of the ADA's reasonable accommodation requirements. The Plaintiff alleges that the Defendant:

1. Denied her request for an accessible parking space despite her documented mobility-related disability.

2. Ignored her request for her teaching assignments to be moved in closer proximity to one another due to her mobility-related disability.

3. Denied her request for online teaching accommodation, when her prior request was ignored.

4. Retaliated against her after requesting accommodation by placing her on administrative leave and terminating her employment.

## B. Retaliation Under the ADA and ADEA

Whether the Defendant unlawfully retaliated against Plaintiff for engaging in protected activity, including requesting accommodation and reporting discrimination. The Plaintiff asserts that the Defendant unlawfully retaliated against her for engaging in protected activity, including making multiple internal complaints, requesting reasonable accommodation, and reporting disparate treatment to Human Resources. The evidence demonstrates a clear pattern of escalating retaliation following each protected action:

Spring 2019 – Plaintiff requested an accessible parking space and was denied.

2020-2021 – Plaintiff made internal complaints alleging discrimination, hostile work environment, and harassment. The Defendant ignored or dismissed these complaints.

April 2022 – Plaintiff reported a safety concern and was suddenly placed on administrative leave, despite following established campus security protocols.

July 2022 – Plaintiff requested accommodations for Fall 2022 (ignored).

August 2022 – Plaintiff adjusted her class format to accommodate her disability after Defendant failed to act and was suddenly reprimanded for doing so.

September 2022 – Plaintiff was terminated under inconsistent and shifting justifications, immediately following her latest request for accommodations.

May 2023 – Plaintiff filed an EEOC Charge of Discrimination, confirming that her termination was retaliatory in nature.

Retaliation under the ADA and ADEA occurs when an employer takes an adverse employment action against an employee because they engaged in protected activity (Burlington N. & Santa Fe Ry. v. White, 548 U.S. 53 (2006)). Here, the timing and pattern of the Defendant's actions directly link the Plaintiff's protected activities to the retaliatory adverse actions, creating a presumption of retaliation under federal law. Further, the Defendant's failure to follow progressive discipline before termination further supports the pretextual nature of its justifications. The Plaintiff had no documented history of performance issues, and yet the Defendant suddenly alleged multiple infractions immediately after she exercised her legal rights. Courts have held that an employer's deviation from standard procedures is evidence of pretext and retaliation (McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)). The Plaintiff seeks a ruling on whether the Defendant's sudden administrative leave, disciplinary actions, and termination were retaliatory in nature, given the clear temporal proximity to the Plaintiff's protected actions. The Plaintiff asserts that the Defendant retaliated against her by:

1. Placing her on administrative leave after she reported discrimination and requested accommodation.

2. Failing to address her complaints and instead subjecting her to adverse employment actions.

3. Terminating her employment shortly after her final attempt to secure accommodation and report discriminatory treatment.

## C. Genetic Information Nondiscrimination Act: Discrimination and Retaliation

Whether the Defendant violated the Genetic Information Nondiscrimination Act (42 U.S.C. § 2000ff et seq.) by improperly considering the Plaintiff's genetic information in employment decisions and retaliating against her for opposing such practices. Federal law does not require an employer to have directly obtained genetic information to violate GINA, even if an employer indirectly acquires knowledge of an employee's genetic condition and uses that knowledge in employment decisions, it constitutes discrimination under GINA (Ortiz v. City of San Antonio Fire Department, 806 F.3d 822 (5th Cir. 2015)). In this case, the Plaintiff asserts that the Defendant either directly acquired or became aware of her genetic condition and then used that information against her in employment decisions. Additionally, courts have recognized that

9

when an employer uses an employee's genetic information to assume they are incapable of performing job duties, it may also constitute ADA "regarded as" discrimination (EEOC v. Fabricut, Inc., No. 13-CV-248-CVE-PJC, 2013 U.S. Dist. LEXIS 173241).The Plaintiff asserts that the Defendant gained access to her genetic information and used it in decisions, including:

1. Making adverse decisions about her work conditions based on her genetic diagnosis and predisposition to a progressive medical condition.
2. Creating a hostile work environment by allowing colleagues and supervisors to make disparaging remarks related to her condition.

After engaging in protected activities, the Defendant escalated adverse actions against the Plaintiff, culminating in her placement on administrative leave and termination. Courts have held that close temporal proximity between protected activity and adverse actions is sufficient to establish a prima facie case of retaliation (Burlington N. & Santa Fe Ry. v. White, 548 U.S. 53 (2006)). Here, the timing of the Defendant's actions strongly supports an inference of retaliation under GINA. The Plaintiff further alleges that she engaged in protected activity under GINA and was then subjected to retaliation, including:

1. Unwarranted reprimands.
2. Denial of accommodations and promotions.
3. Placement on administrative leave and termination.

The following timeline supports Plaintiff's claim that Defendant engaged in a pattern of escalating retaliation:

Spring 2019: Plaintiff requested accommodation for her disability (denied).

2020-2021: Plaintiff made multiple internal complaints about discrimination and harassment.

April 2022: Plaintiff reported a workplace security concern and was placed on administrative leave shortly thereafter, a decision that lacked justification.

July 2022: Plaintiff formally requested accommodation for Fall 2022 courses (ignored).

August 2022: Plaintiff adapted her teaching schedule to meet her medical needs after Defendant failed to provide accommodation and was suddenly reprimanded for doing so.

September 2022: Plaintiff was terminated under shifting and inconsistent justifications.

May 2023: Plaintiff filed an EEOC Charge of Discrimination citing retaliation.

### D. Hostile Work Environment

Whether the Defendant subjected the Plaintiff to a hostile work environment based on disability, genetic information, and age discrimination. The Plaintiff's hostile work environment claim is based on the Defendant's persistent and pervasive discriminatory conduct, which altered the conditions of her employment and created an intolerable work environment. Under Harris v. Forklift Systems, Inc., 510 U.S. 17 (1993), a hostile work environment exists when the workplace is "permeated with discriminatory intimidation, ridicule, and insult" that is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." The evidence will show that the Defendant's actions, including derogatory comments about Plaintiff's body and disability, exclusion from professional opportunities, and retaliatory administrative leave, meet this legal threshold. The Plaintiff alleges that she experienced severe and pervasive harassment, including:

1. Derogatory remarks about her body and physical condition.
2. Exclusion during faculty meetings, introductions, and advancement opportunities.
3. Intimidation and humiliation, including a simulated act of aggression by a colleague.

The Plaintiff further asserts that the Defendant failed to address her complaints, allowing the harassment to continue.

### E. Unequal Pay Under the ADEA and EPA

Whether the Defendant's compensation structure resulted in Plaintiff being paid less than similarly situated faculty members in violation of the Age Discrimination in Employment Act and the Equal Pay Act. The Plaintiff's pay discrimination claim is brought under both the Age Discrimination in Employment Act (ADEA) (29 U.S.C. § 621 et seq.) and the Equal Pay Act (EPA) (29 U.S.C. § 206(d)), both of which prohibit wage disparities based on protected characteristics. The Defendant's failure to provide legitimate, non-discriminatory justifications for Plaintiff's lower salary compared to similarly situated faculty members demonstrates that the pay disparity was based on age and disability rather than experience or performance. The

11

Plaintiff requests that comparator salary data and industry pay standards be considered in assessing wage discrimination.

1. The Plaintiff alleges that she was paid less than other faculty members performing similar duties.
2. The Plaintiff contends that her lower salary was a result of age and disability discrimination.

## F. Pretext for Wrongful Termination

Whether the Defendant's stated reasons for terminating the Plaintiff were pretextual, meaning they were not the actual reasons for her firing. The Plaintiff contends that the Defendant's stated reasons for her termination were pretextual, meaning they were not the true reasons for her dismissal but rather a cover for unlawful discrimination and retaliation. The Defendant's failure to follow standard termination procedures emphasizes the pretextual context of the plaintiff's dismissal. Courts have ruled that when an employer deviates from standard policy without explanation, it supports an inference of discrimination. Under the McDonnell Douglas burden-shifting framework (McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)), once an employer provides a non-discriminatory reason for termination, the burden shifts back to the employee to demonstrate that the stated reason is mere pretext for discrimination or retaliation. The Plaintiff presents strong evidence of pretext, including shifting justifications, failure to follow policy, lack of prior discipline, suspicious timing, and positive performance evaluations. The Plaintiff argues that:

1. The Defendant's explanation for her termination changed over time, which suggests pretext for unlawful termination.
2. No prior disciplinary actions were documented before she was placed on leave and terminated.
3. Her termination closely followed her last request for accommodation, suggesting retaliatory motive.
4. Her performance and student evaluations were overwhelmingly positive.

## 5. Novel or Unusual Questions of Law or Evidence

1. The Plaintiff understands that GINA litigation is relatively rare, and this case presents a unique legal question regarding whether the Defendant improperly used the Plaintiff's genetic information in employment decisions. The Plaintiff alleges that the Defendant possessed knowledge of her genetic condition, and that this information influenced adverse actions, including the denial of accommodations, unwarranted reprimands, denial of promotions, and placement on administrative leave leading to termination. Given the limited precedent on GINA claims involving retaliation and accommodation denials, this issue requires special consideration.

2. The Defendant has provided multiple, inconsistent explanations for the Plaintiff's paid leave and termination, including alleged student complaints, failure to turn in syllabi, unauthorized class modifications, and general concerns about the Plaintiff's conduct. The Supreme Court has recognized that shifting justifications can serve as strong evidence of pretext. The Plaintiff contends that the Defendant's evolving explanations were designed to conceal the true motive behind her termination. The Plaintiff seeks court guidance on whether the jury may be instructed that shifting justifications can be considered evidence of pretext.

3. The Plaintiff seeks compensatory and punitive damages for each discrimination claim, along with back pay and front pay based on equitable salary comparisons, and liquidated damages for willful and reckless discrimination. The Plaintiff requests that damages be calculated using comparative employment practices and lost future earning potential. Given the complexities of calculating front pay in an academic employment setting, The Plaintiff seeks court guidance on the appropriate method for such calculations and whether comparator salary data may be presented to establish pay discrepancies.

## 6. Damages

The Plaintiff seeks monetary, equitable, and injunctive relief to remedy the Defendant's discriminatory and retaliatory practices. The Plaintiff reserves the right to adjust damages calculations based on evidence presented at trial.

| Category | Amount |
| --- | --- |
| Compensatory & Punitive Damages (3 violations × $300,000 each) | $900,000 |
| Professoriate Back Pay | $105,000 |
| Professoriate Front Pay | $150,000 |
| Director Back Pay | $122,500 |
| Director Front Pay | $175,000 |
| Liquidated Damages (Emotional Distress, Career Loss, etc.) | $3,000,000 |
| Total Economic & Liquidated Damages | $4,452,500 |
| Equitable & Injunctive Relief | (Non-monetary) |
| Associated Fees & Costs | (To be determined) |

**The Plaintiff also seeks:**

Reinstatement of all employment and retirement benefits.

Removal of adverse personnel records.

Restoration of the Plaintiff's name and professional reputation.

A formal written apology from the Defendant.

**7. Other Trial Information and Matters**

Pursuant to the Federal Rule of Civil Procedure and the requirements set forth in the Scheduling Order, the Plaintiff has refined her pleadings to conform to the issues, claims, and legal arguments outlined herein. All amendments reflect the operative facts, contested legal issues, and requested relief as presented in this pretrial order. The Plaintiff reserves the right to make any additional modifications permitted by the Court as necessary to address new evidence or rulings arising prior to trial. The Plaintiff estimates trial will require four eight-hour days. The Plaintiff

remains open to settlement discussions. Pretrial disclosures and final witness and exhibit lists shall be exchanged in accordance with the Scheduling Order.

Respectfully submitted this 3rd day of April, 2025.

Dr. Kelly Brooke Martin, Plaintiff, pro se

## CERTIFICATE OF SERVICE

I hereby certify that on April 3rd, 2025, I provided a true and correct copy of the foregoing response via electronic mail to:

1.  Harold.Pinkley@tennessee.edu

2.  Dgarner2@utk.edu

On this 3rd day of April, 2025.

Dr. Kelly Brooke Martin, Plaintiff, pro se

803 W 1st Avenue

Lenoir City, TN 37917-2717

Kmarti16utk@gmail.com

865.898.4965